Brendan Cummings (CA Bar No. 193952)
CENTER FOR BIOLOGICAL DIVERSITY
P.O. Box 549
Joshua Tree, CA 92252
Phone: (760) 366-2232
Facsimile: (760) 366-2669
Email: bcummings@biologicaldiversity.org

Andrea A. Treece (CA Bar No. 237639)
Miyoko Sakashita (CA Bar No. 239639)
CENTER FOR BIOLOGICAL DIVERSITY
351 California Street, Suite 600
San Francisco, CA 94104
Phone: (415) 436-9682
Facsimile: (415) 436-9683
Email: atreece@biologicaldiversity.org
       miyoko@biologicaldiversity.org

Attorneys for Plaintiffs

UNITED STATES DISTRICT COURT FOR THE

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CENTER FOR BIOLOGICAL DIVERSITY, OCEANA, INC., and TURTLE ISLAND RESTORATION NETWORK, non-profit corporations,<br><br>Plaintiffs,<br><br>v.<br><br>GARY LOCKE, in his official capacity as Secretary of Commerce; NATIONAL MARINE FISHERIES SERVICE, an agency of the United States Department of Commerce, KEN SALAZAR, in his official capacity as Secretary of the Interior; and UNITED STATES FISH AND WILDLIFE SERVICE, an agency of the United States Department of the Interior,<br><br>Defendants. | Case No.:<br><br>**COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF** |

COMPLAINT FOR DECLARATORY
AND INJUNCTIVE RELIEF

## I.     INTRODUCTION

1. In this civil action for declaratory and injunctive relief, Plaintiffs Center for Biological Diversity ("the Center"), Oceana, Inc. ("Oceana"), and Turtle Island Restoration Network ("Turtle Island") challenge the failure of Defendants Gary Locke, in his official capacity as Secretary of Commerce, and the National Marine Fisheries Service (collectively "Fisheries Service"), and Ken Salazar, in his official capacity as Secretary of the Interior, and the U.S. Fish and Wildlife Service (collectively "Fish and Wildlife Service") to comply with the non-discretionary provisions of the Endangered Species Act, 16 U.S.C. §§ 1531-1544 ("Act"), with regard to the protection of imperiled sea turtles off the Pacific and Atlantic coasts of the United States.

2. The loggerhead and leatherback sea turtles are among the most imperiled of sea turtle species and have experienced significant declines in recent years. Both species face numerous threats, including incidental capture, injury, and death in fishing gear, loss of nesting beaches from development and sea level rise, and other adverse impacts from climate change and ocean acidification. And while both species currently receive some protections under the Endangered Species Act, without increased protection the future for each species is grim.

3. In light of the significant threats facing these turtles, in 2007 Plaintiffs submitted a series of petitions seeking greater protection for each species under the Endangered Species Act. Specifically, Plaintiffs requested that the Fisheries Service designate as critical habitat for the leatherback sea turtle the ocean waters off the northern California and Oregon coasts. For loggerheads, Plaintiffs requested that the Fisheries Service and the Fish and Wildlife Service delineate and reclassify from "threatened" to "endangered" distinct loggerhead populations in the North Pacific and in the Western North Atlantic.

4. The Endangered Species Act requires the Fisheries Service and the Fish and Wildlife Service to determine within 90 days of receipt of a petition whether the petitioned action *may be* warranted, and if so, to carry out a more detailed review and to make a determination within 12 months of receipt of the petition whether such action *is* in fact warranted. 16 U.S.C. §§ 1533(b)(3)(A), 1533(b)(3)(B) & 1533(b)(3)(D). With regard to each of Plaintiffs' petitions, the Fisheries Service and the Fish and Wildlife Service made the requisite initial, or "90-day" finding, but have failed to make the required 12-month finding. These findings are now between six and ten months overdue. Plaintiffs

COMPLAINT FOR DECLARATORY
AND INJUNCTIVE RELIEF

1 bring this action to compel the Fisheries Service and the Fish and Wildlife Service to make the required
2 findings on their petitions by a date certain.

## II.   JURISDICTION, VENUE, and INTRADISTRICT ASSIGMENT

4   5.   The Court has jurisdiction over this action pursuant to 16 U.S.C. §§ 1540(c) & (g) (action arising under the Endangered Species Act and citizen suit provision), 28 U.S.C. § 1331 (federal question), 5 U.S.C. § 702 (Administrative Procedure Act), and 28 U.S.C. § 1361 (mandamus). The relief sought is authorized by 28 U.S.C. §§ 2201 (declaratory judgment) and 28 U.S.C. § 2202 (injunctive relief).

6.   Venue is proper in the Northern District of California pursuant to 28 U.S.C. § 1391(e) as Plaintiff Turtle Island Restoration Network resides in this judicial district and leatherback and loggerhead sea turtles occur in this judicial district.

7.   Pursuant to Local Rules 3-5(a) and 3-2(c) and (d), assignment of this case to the San Francisco or Oakland Division is appropriate.

8.   By written notice sent by certified mail on March 12, 2009, Plaintiffs informed Defendants of their violations more than sixty days prior to the filing of this Complaint, as required by the Endangered Species Act.  16 U.S.C. § 1540(g).  Despite receipt of Plaintiffs' notice letter, Defendants have failed to remedy their violations of the Act.

9.   An actual, justiciable controversy exists between the parties within the meaning of 28 U.S.C. § 2201.

10.   Plaintiffs have no adequate remedy at law.  Defendants' continuing failure to comply with the Endangered Species Act will result in irreparable harm to the leatherback and loggerhead sea turtles, to Plaintiffs and Plaintiffs' members, and to the public.  No monetary damages or other legal remedy can adequately compensate Plaintiffs, their members, or the public for this harm.

11.   Plaintiffs and Plaintiffs' members are adversely affected or aggrieved by federal agency inaction and are entitled to judicial review of such inaction within the meaning of the Endangered Species Act and the Administrative Procedure Act. Defendants' failure to comply with the Act's mandatory deadlines prevents the completion of the listing and critical habitat designation process and therefore the implementation of additional measures to protect the loggerhead and leatherback sea

1   turtles based on the listing and critical habitat designation. Without the additional protections that
2   would be available subsequent to a favorable ruling on Plaintiffs' petitions, loggerhead and leatherback
3   sea turtles are more likely to continue to decline and become extinct. Plaintiffs are therefore injured
4   because Plaintiffs' use and enjoyment of the loggerhead and leatherback sea turtles, and those areas
5   inhabited by the turtles and described below, are threatened by Defendants' violation of the Endangered
6   Species Act. Defendants' failure to comply with the Act's deadlines has also resulted in informational
7   and procedural injury to Plaintiffs, because the ESA affords Plaintiffs procedural and informational
8   rights, including the right to a timely response to their petitions and the opportunity to comment on and
9   otherwise participate in the statutorily-mandated listing process triggered by the filing of a petition.
10  Defendants' failure to timely process Plaintiffs' petition frustrates these rights. These are actual,
11  concrete injuries to Plaintiffs, caused by Defendants' failure to comply with the Endangered Species
12  Act, the Administrative Procedure Act, and their implementing regulations. The relief requested will
13  fully redress those injuries.

14      12.  The federal government has waived sovereign immunity in this action pursuant to 16
15  U.S.C. § 1540(g) and 5 U.S.C. § 702.

### III.  PARTIES

17      13.  Plaintiff CENTER FOR BIOLOGICAL DIVERSITY ("the Center") is a non-profit
18  501(c)(3) corporation with offices in San Francisco, Joshua Tree, and San Diego, California; as well as
19  in Arizona, New Mexico, Oregon; and Washington, D.C. Through science, policy, and environmental
20  law, the Center is actively involved in species and habitat protection issues throughout the United
21  States, including efforts related to the loggerhead sea turtle and leatherback sea turtles, and the effective
22  implementation of the Endangered Species Act. The Center has over 40,000 members throughout the
23  United States and the world. The Center's members and staff have researched, studied, observed, and
24  sought protection for these species. In addition, the Center's members and staff have visited and
25  observed each of the species at issue in this suit in the Atlantic Ocean and Pacific Ocean. The Center's
26  members and staff intend to continue to visit and observe, or attempt to visit and observe, these species
27  in the near future. The Center's members and staff derive scientific, recreational, conservation, and
28  aesthetic benefits from these rare species' existence in the wild. Defendants' failure to comply with

COMPLAINT FOR DECLARATORY
AND INJUNCTIVE RELIEF            Page 3

1  Endangered Species Act requirements directly harm these interests. The Center brings this action on
2  behalf of itself and its adversely affected members.

3        14. Plaintiff OCEANA, INC. ("Oceana") is a 501(c)(3) non-profit international advocacy
4  organization dedicated to protecting and restoring the world's oceans through policy, advocacy,
5  science, law, and public education. Oceana has over 28,000 members around the world. Oceana is
6  organized under the laws of the District of Columbia, and maintains its headquarters in Washington,
7  D.C. It has offices or staff in five states (Alaska, California, Massachusetts, New York, and Oregon)
8  and three foreign countries (Chile, Belgium, and Spain). Oceana plans to open an office in Belize in
9  summer 2009. Through its policy, scientific, litigation, and grass-roots activities, Oceana has been a
10 prominent advocate for protecting threatened and endangered marine species and marine ecosystems.
11 Many of Oceana's members enjoy the esthetic pleasure of observing loggerhead and leatherback sea
12 turtles, study them as scientists, and/or work to protect their nesting areas and save them when they are
13 stranded. Oceana has worked for years to protect the interests of its members in conserving and
14 recovering loggerhead and leatherback sea turtles, including defending the closure to longline fishing
15 on the Grand Banks, advocating to enlarge the size of Turtle Excluder Devices, advocating to improve
16 the monitoring of sea turtle bycatch in U.S. Atlantic trawl and dredge fisheries, and advocating against
17 activities that seek to expand longlining or roll back conservation measures to protect loggerheads and
18 leatherbacks from such activities in the Pacific Ocean.

19       15. Plaintiff TURTLE ISLAND RESTORATION NETWORK ("Turtle Island") is a non-
20 profit corporation with its principal place of business in Marin County, California. The Sea Turtle
21 Restoration Project, established in 1989, operates as a project of Turtle Island and is dedicated to the
22 protection and restoration of endangered and threatened species of sea turtles. Turtle Island and the Sea
23 Turtle Restoration Project have over 2,100 members in California and elsewhere, each of whom shares
24 a commitment to the study, protection, enhancement, conservation, and preservation of the world's
25 marine ecosystems and the wildlife that inhabit the oceans. Members and staff engage in a number of
26 wildlife-viewing activities such as swimming, snorkeling, scuba, and wildlife watching, with a
27 particular interest in seeing and sharing the water with loggerhead and leatherback sea turtles. The staff
28 and members of Turtle Island and the Sea Turtle Restoration Project also include wildlife biologists

COMPLAINT FOR DECLARATORY
AND INJUNCTIVE RELIEF      Page 4

who are engaged in the study, protection, enhancement, conservation and preservation of these imperiled sea turtle species, as well as professional wildlife photographers whose livelihoods depend in part on their continued ability to photograph sea turtles, whales, dolphins and other marine species. Turtle Island, including its Sea Turtle Restoration Project, brings this action on behalf of itself and its adversely affected members.

16. Plaintiffs' members and staff include individuals with interests in leatherback and loggerhead sea turtles and their habitats ranging from scientific, professional, and educational to recreational, aesthetic, moral, and spiritual. Further, Plaintiffs' members and staff enjoy, on an on-going basis, the biological, scientific, research, education, conservation, recreational and aesthetic values of the regions inhabited by these species and more specifically, the areas inhabited and visited by the populations of turtles at issue in this suit. Plaintiffs' staff and members observe and study both leatherback and loggerhead sea turtles and their habitats, and derive professional, scientific, educational, recreational, aesthetic, inspirational, and other benefits from these activities and have an interest in preserving the possibility of such activities in the future. An integral aspect of the Plaintiffs' members' use and enjoyment of the sea turtles is the expectation and knowledge that the species are in their native habitat. For this reason, Plaintiffs' use and enjoyment of loggerhead and leatherback sea turtles is entirely dependent on the continued existence of healthy, sustainable populations in the wild. Plaintiffs bring this action on their own behalf and on behalf of their adversely affected members and staff.

17. Defendant GARY LOCKE, United States Secretary of Commerce, is the highest ranking official within the Department of Commerce and, in that capacity, has ultimate responsibility for its administration and implementation of the Endangered Species Act with regard to loggerhead and leatherback sea turtles, and for compliance with all other federal laws applicable to the Department of Commerce. He is sued in his official capacity.

18. Defendant NATIONAL MARINE FISHERIES SERVICE ("Fisheries Service") is a federal agency within the Department of Commerce. Through delegation of authority from the Secretary of Commerce, the Fisheries Service administers and implements Endangered Species Act, and is legally responsible for complying with the Act's mandatory deadlines and for making decisions

and promulgating regulations under the Act, including issuing proposed and final listing decisions and the processing of petitions such as those at issue in this case.

19. Defendant KEN SALAZAR, United States Secretary of the Interior is the highest ranking official within the Department of the Interior and, in that capacity, has ultimate responsibility for its administration and implementation of the Endangered Species Act with regard to loggerhead and leatherback sea turtles, and for compliance with all other federal laws applicable to the Department of the Interior. He is sued in his official capacity.

20. Defendant UNITED STATES FISH AND WILDLIFE SERVICE is the agency within the Department of the Interior. Through delegation of authority from the Secretary of the Interior, the Fish and Wildlife Service administers and implements the Endangered Species Act, and is legally responsible for complying with the Act's mandatory deadlines and for making decisions and promulgating regulations under the Act, including issuing proposed and final listing decisions and processing of petitions such as those at issue in this case.

## IV. STATUTORY BACKGROUND

21. The Endangered Species Act is a federal statute enacted to conserve endangered and threatened species and the ecosystems upon which they depend. 16 U.S.C. § 1531(b). The Act is the most comprehensive legislation for the preservation of endangered species. The Supreme Court has concluded the Endangered Species Act requires that endangered species be afforded the highest of priorities. Congress's intent, reflected in the plain language of the Act, was to prevent extinction and promote the recovery of imperiled species, regardless of cost.

22. The Endangered Species Act assigns responsibility to implement the statute to the Secretaries of Commerce and the Interior, which in turn have delegated responsibility to the Fisheries Service and the Fish and Wildlife Service respectively. Generally, the Fisheries Service has jurisdiction over marine species, while the Fish and Wildlife Service has jurisdiction over terrestrial and freshwater species. The two agencies have joint jurisdiction over sea turtles, with the Fisheries Service responsible for the sea turtles in the ocean and the Fish and Wildlife Service responsible when they come ashore to nest.

23. The Endangered Species Act protects species listed as either "endangered" or "threatened" by the Fish and Wildlife Service and/or the Fisheries Service. A species is "endangered" if it "is in danger of extinction throughout all or a significant portion of its range." 16 U.S.C. § 1532(6). A species is "threatened" if it is "likely to become an endangered species within the foreseeable future." 16 U.S.C. § 1532(20).

24. A number of statutory protections apply to listed species. For example, Section 7 of the Endangered Species Act requires all federal agencies to "insure" that their actions neither "jeopardize the continued existence" of any listed species nor "result in the destruction or adverse modification" of its "critical habitat." 16 U.S.C. § 1536(a)(2). Section 9 and its regulations further prohibit, among other things, "any person" from intentionally "taking" listed species or "incidentally" taking listed species without a permit from the Fisheries Service. 16 U.S.C. §§ 1538(a)(1)(B), 1539. Other provisions require the Fisheries Service and/or the Fish and Wildlife Service to designate "critical habitat" for listed species, 16 U.S.C. § 1533(a)(3), require the agencies to "develop and implement" recovery plans for listed species, 16 U.S.C. § 1533(f), authorize the acquisition of land for the protection of listed species, 16 U.S.C. § 1534, and make federal funds available to states to assist in their efforts to preserve and protect threatened and endangered species, 16 U.S.C. § 1535(d).

25. The designation and protection of critical habitat is one of the primary ways in which the fundamental purpose of the Endangered Species Act, "to provide a means whereby the ecosystems upon which endangered species and threatened species depend may be conserved," is achieved. 16 U.S.C. §1531(b).

26. The term "species" is defined broadly under the Endangered Species Act to include "any subspecies of fish or wildlife or plants, and any distinct population segment of any species of vertebrate fish or wildlife which interbreeds when mature." 16 U.S.C. § 1532(16). A distinct population segment of a vertebrate species can be protected as a "species" under the Act even though it has not formally been described as a "species" in the scientific literature. A species may be composed of several distinct population segments, some or all of which warrant listing under the Act.

27. In order to ensure the timely protection of species, Congress set forth the listing and critical habitat designation processes described below. These processes include mandatory, non-

1  discretionary deadlines for the required findings that the Fisheries Service and the Fish and Wildlife
2  Service must meet, so that species in need of protection do not languish in administrative purgatory.

3      28.      Any interested person can begin the listing process by filing a petition to list or reclassify
4  a species with the Fisheries Service and/or the Fish and Wildlife Service. 16 U.S.C. § 1533(b)(3)(A);
5  50 C.F.R. § 424.14(a). Similarly, the critical habitat designation and revision process can begin either
6  by citizen petition or by internal agency processes. 16 U.S.C. § 1533(b)(3)(D).

7      29. Both processes involve two required findings, the "90-day finding" and the "12-month
8  finding," as well as the final action, which is either a listing and/or a critical habitat determination,
9  depending on the type of petition.

10     30.      Upon receipt of a petition to list or reclassify a species, the Fisheries Service and/or the
11  Fish and Wildlife Service must "to the maximum extent practicable," make a finding within 90 days as
12  to whether the petition "presents substantial scientific or commercial information" indicating that the
13  petitioned action may be warranted. 16 U.S.C. §§ 1533(b)(3)(A); 50 C.F.R. § 424.14(b)(1).

14     31.      Upon issuing a positive 90-day finding in response to petition to list or reclassify a
15  species, the Fisheries Service and/or the Fish and Wildlife Service must then conduct a full review of
16  the status of the species. 50 C.F.R. § 424.14. Upon completion of this status review, and within 12
17  months from the date that the agency received the petition, the Fisheries Service and/or the Fish and
18  Wildlife Service must make one of three findings: (1) the petitioned action is not warranted; (2) the
19  petitioned action is warranted; or (3) the petitioned action is warranted but presently precluded by other
20  pending proposals for listing species, provided certain circumstances are present. 16 U.S.C. §
21  1533(b)(3)(B); 50 C.F.R. § 424.14 (b)(3).

22     32.      If the Fisheries Service and/or the Fish and Wildlife Service determines in the 12-month
23  finding that the listing or reclassification of the species is warranted, then the agency must publish in
24  the Federal Register a proposed rule, for public comment, to list such species as endangered or
25  threatened. 16 U.S.C. § 1533(b)(5).

26     33.      Within one year of the publication of a proposed rule to list a species, the Endangered
27  Species Act requires the Fisheries Service and/or the Fish and Wildlife Service to render a final
28  determination on the proposal. 16 U.S.C. § 1533(b)(6)(A). At such time, the agency must either list

COMPLAINT FOR DECLARATORY
AND INJUNCTIVE RELIEF      Page 8

1  the species, withdraw the proposal, or if there is substantial disagreement about scientific data, delay a
2  final determination for up to six months to solicit more scientific information.  16 U.S.C. §§
3  1533(b)(6)(A)(i)(III); 1533(b)(6)(B)(i).

4      34.    Concurrently with a final determination to list a species, the Fisheries Service and/or the
5  Fish and Wildlife Service must render a final decision concerning the designation of critical habitat for
6  the species to the maximum extent prudent and determinable.  16 U.S.C. §§ 1533(a)(3) &
7  1533(b)(6)(C).

8      35.    While critical habitat is generally to be designated concurrently with listing, the
9  Endangered Species Act contemplates that for some species new information will arise necessitating a
10 revision of the habitat designation.  Accordingly, the statute provides a process for the Fisheries Service
11 and/or the Fish and Wildlife Service to respond to petitions to revise critical habitat.  16 U.S.C. §
12 1533(b)(3)(D).  This process is very similar to the process for listing and reclassifying species.

13     36.    Upon receipt of a petition to revise critical habitat, the Fisheries Service and/or the Fish
14 and Wildlife Service must, "to the maximum extent practicable," make a finding within 90 days as to
15 whether the petition "presents substantial scientific or commercial information" indicating that the
16 petitioned action may be warranted.  16 U.S.C. § 1533(b)(3)(D)(i).

17     37.    Once the Fisheries Service and/or the Fish and Wildlife Service issues a positive 90-day
18 finding in response to a petition to revise a critical habitat designation, the agency must then, within 12
19 months of the date the agency received the petition, "determine how [the agency] plans to proceed with
20 the requested revision."  *Id.* § 1533(b)(3)(D)(ii).

21     38.    The Fisheries Service and/or the Fish and Wildlife Service must publish notice, and the
22 complete text, of any proposed regulation regarding a critical habitat revision at least 90 days before the
23 regulation becomes effective.  16 U.S.C. § 1533(b)(5)(A)(i).

24     39.    Within one year of the publication of a proposed rule to revise critical habitat, the
25 Endangered Species Act requires the Fisheries Service and/or the Fish and Wildlife Service to render a
26 final determination on the proposal.  16 U.S.C. § 1533(b)(6)(A).  At that time, the Fisheries Service
27 and/or the Fish and Wildlife Service must either implement the proposed revision, find that the revision
28 should not be made, withdraw the proposal and explain its reasons for doing so, or, if there is

COMPLAINT FOR DECLARATORY
AND INJUNCTIVE RELIEF          Page 9

1  substantial disagreement about scientific data, delay a final determination for up to six months to solicit more scientific information.  16 U.S.C. §§ 1533(b)(6)(A)(i)(III);  1533(b)(6)(B)(i).

## V.    FACTUAL AND PROCEDURAL BACKGROUND

### A.    The Loggerhead Sea Turtle

40.    The loggerhead sea turtle (*Caretta caretta*) is reddish brown to yellow in color with a large head.  Adult loggerheads weigh between 150 and 400 pounds and are 2.5 to 3.5 feet long. The loggerhead feeds primarily on mollusks and crustaceans.  All loggerhead turtles in the Pacific breed in the western Pacific.  Loggerheads off the West Coast of the United States are part of a distinct North Pacific population that breeds in Japan.  Other populations of loggerhead occur in the South Pacific, Indian Ocean, Mediterranean Sea, and Western North Atlantic.  Loggerheads in the Western North Atlantic population nest primarily in Florida, with the south Florida nesting aggregation being one of the two largest in the world.  The primary threats to the species are fisheries related mortality and destruction of its nesting grounds. The loggerhead sea turtle is listed as "threatened" globally.  No critical habitat has been designated for the species.

41.    While loggerheads are globally listed as "threatened" under the Endangered Species Act, both the North Pacific population segment, which has declined by at least 80% over the last 20 years, and the Western North Atlantic population segment, which has experienced reductions in nesting of over 40% in the past decade in its crucial Florida nesting aggregations, would, if separately recognized under the Act, warrant protection as "endangered" under the statute.

42.    As noted above, the Endangered Species Act provides for the protection of distinct population segments of species.  The North Pacific and the Western North Atlantic population segments both meet the criteria for classification as distinct population segments.

43.    North Pacific loggerheads are a discrete population segment as they are genetically distinct and geographically isolated from loggerheads in the Atlantic as well as from loggerheads nesting in the South Pacific and Indian Oceans.  North Pacific loggerheads originate from nesting sites in the Japanese archipelago and forage in the waters along the Pacific coast of North America, from Alaska south to Baja California.  Within U.S. jurisdiction, loggerheads are frequently encountered at sea, most often within the Southern Califorina Bight and in waters around Hawai'i, and occasionally in

the Pacific territories. There is no documented nesting of loggerhead sea turtles within the jurisdiction of the United States in the North Pacific.

44. North Pacific loggerheads do not interbreed with other populations and therefore their loss would result in a significant decrease in the range of the loggerhead sea turtle.

45. Western North Atlantic loggerheads are also a discrete population segment. DNA evidence shows that Western North Atlantic loggerheads are genetically distinct from all other populations. They are also morphologically distinct from all populations but the South Atlantic population. Western North Atlantic loggerheads occupy a geographically distinct ecosystem with distinct characteristics and they are separated from all other loggerheads except Mediterranean loggerheads, which use different nesting and adult foraging grounds. In particular, because of behavior patterns, Western North Atlantic loggerheads are not likely to interbreed with other populations.

46. If the Western North Atlantic loggerhead population were lost, it would result in a significant gap in the range of the species. The southeast United States nesting aggregation of the Western North Atlantic population is the largest in the Atlantic, accounting for 90% of loggerhead nesting activity in the Atlantic, and is the second largest loggerhead nesting aggregation in the world. However, data show that this crucial part of the population is in serious danger, as loggerhead nesting in Florida has declined by over 40% since 1998.

47. Both the North Pacific population and the Western North Atlantic population of loggerheads satisfy several of the Endangered Species Act's statutory listing factors for the definition of "endangered." *See* 16 U.S.C. § 1533(a)(1)(A)-(E); 50 C.F.R. § 424.11(c)(1) - (5).

48. Loggerhead sea turtles in the North Pacific Ocean are among the most imperiled of any sea turtle population in any ocean basin on Earth. The population, which counts fewer than 1,000 nesting females each year, is imperiled by longline and gillnet fishing, which catches and kills thousands of adult and juvenile north Pacific loggerheads each year in fisheries operated by the United States, Japan, China, and other nations. Numerous loggerheads also are caught and killed in coastal fishing gear off Baja California.

49. Fishery managers have proposed to expand pelagic longline fishing outside the West Coast Exclusive Economic Zone as well as in the waters surrounding the Hawaiian Islands. Each of

COMPLAINT FOR DECLARATORY
AND INJUNCTIVE RELIEF            Page 11

1   these fishery expansions presents an imminent threat of increased harm to the North Pacific loggerhead.

2       50.    The catching and killing of loggerheads by commercial fishing fleets is also a major
3   threat to Western North Atlantic loggerheads, with thousands caught and killed each year.

4       51.    Other threats to the loggerhead sea turtle in both the Atlantic and Pacific include
5   encroachment of nesting beaches by coastal development, plastic pollution and other marine debris,
6   and, in some areas, direct harvesting of adults or eggs.

7       52.    Global warming and its impacts pose an overarching threat to loggerhead sea turtles in
8   the North Pacific, in the Western North Atlantic, and elsewhere. Global warming is likely to cause sea
9   level rise that will inundate nesting beaches. Because the sex-ratio of sea turtle hatchlings depends on
10  temperature, warming may skew sex-ratios and impede reproduction. Ocean warming will likely affect
11  currents, storm frequency and/or intensity, availability of prey, and vulnerability to disease.

12      53.    Ocean acidification, a result of increased greenhouse gas levels and the ocean's
13  absorption of carbon from the atmosphere, also threatens the loggerheads, as it is likely to reduce the
14  availability of the species upon which loggerheads feed.

15  **B.**    **Plaintiffs' Petitions to Reclassify Loggerhead Populations as Endangered**

16      54.    On July 12, 2007, Plaintiffs the Center and Turtle Island submitted a petition ("North
17  Pacific Loggerhead Petition") seeking (1) recognition of the North Pacific loggerhead sea turtle
18  population as a distinct population segment ("DPS"); and (2) a change in its listing from "threatened" to
19  "endangered" under the Endangered Species Act. Petition to Reclassify the North Pacific Distinct
20  Population Segment of the Loggerhead Sea Turtle (*Caretta caretta*) from a Threatened to an
21  Endangered Species Under the Endangered Species Act (July 12, 2007). The petition was received by
22  the Fisheries Service on July 16, 2007.

23      55.    On November 16, 2007, the Fisheries Service responded by making a positive 90-day
24  finding that the North Pacific Loggerhead Petition "presents substantial scientific or commercial
25  information indicating that the petitioned action may be warranted." 16 U.S.C. § 1533(b)(3)(A); 72
26  Fed. Reg. 64,585 (Listing Endangered and Threatened Wildlife and Designating Critical Habitat; 90–
27  day Finding for a Petition to Reclassify the Loggerhead Turtle in the North Pacific Ocean as a Distinct
28  Population Segment with Endangered Status and to Designate Critical Habitat). After this finding, the

COMPLAINT FOR DECLARATORY
AND INJUNCTIVE RELIEF    Page 12

Fisheries Service had one year under the Endangered Species Act from the date it received the Petition to either issue a proposed rule re-listing the species as an endangered DPS or to find that such listing is "not warranted." 16 U.S.C. § 1533(b). The 12-month finding deadline, which the Fisheries Service has no discretion to extend, came and went on July 16, 2008. the Fisheries Service has yet to issue such a finding on the North Pacific Loggerhead Petition.

56. On November 15, 2007, Plaintiffs the Center and Oceana submitted a second petition seeking (1) recognition of the Western North Atlantic loggerhead sea turtle population as a DPS; and (2) listing the Western North Atlantic loggerhead turtles as "endangered" under the Endangered Species Act. Petition Pursuant to the Endangered Species Act to Designate the Western North Atlantic Subpopulations of the Loggerhead Sea Turtle (*Caretta caretta*) as a Distinct Population Segment and to Reclassify the Western North Atlantic Subpopulations as Endangered (November 15, 2007) ("Western North Atlantic Loggerhead Petition"). This petition was received on November 16, 2007.

57. On March 5, 2008, the Fisheries Service responded by making a positive 90-day finding that the Western North Atlantic DPS petition "presents substantial scientific or commercial information indicating that the petitioned action may be warranted." 16 U.S.C. § 1533(b)(3)(A); 73 Fed. Reg. 11,849 (Listing Endangered and Threatened Wildlife and Designating Critical Habitat; 90–day Finding for a Petition to Reclassify the Loggerhead Turtle in the Western North Atlantic Ocean). After this finding, the Fisheries Service had one year under the Endangered Species Act from the date it received the Petition to either issue a proposed rule reclassifying the species as an endangered DPS or to find that such listing is "not warranted." 16 U.S.C. § 1533(b). The 12-month finding deadline, which the Fisheries Service has no discretion to extend, passed on November 16, 2008. The Fisheries Service has yet to issue a finding on the Western North Atlantic DPS Petition.

58. Because North Pacific loggerheads are not known to nest on lands subject to U.S. jurisdiction, the Fisheries Service has sole responsibility for responding to the North Pacific loggerhead petition. Because Western North Atlantic loggerheads nest in Florida and elsewhere in the southeastern United States, as well as Puerto Rice and the U.S. Virgin Islands, the Fisheries Service and the Fish and Wildlife Service share legal responsibility with regard to responding to Plaintiffs' petition. The Fisheries Service has assumed primary responsibility for responding to both petitions.

**C.     The Leatherback Sea Turtle**

59.     The leatherback sea turtle (*Dermochelys coriacea*) is the largest of the sea turtles, weighing between 700 and 2,000 pounds as an adult, and ranging from 4 to 8 feet in length. While other sea turtles have hard shells, the leatherback has a rubbery shell. Leatherbacks feed primarily on jellyfish. They are capable of diving to depths greater than 3,000 feet. In the eastern Pacific, the leatherback sea turtle nests along beaches in Mexico and Costa Rica. Leatherbacks also nest in the western Pacific in New Guinea, Indonesia, Malaysia, the Solomon Islands, and Australia. The species is in rapid decline and considered to be close to extinction in the Pacific. In the Atlantic, leatherbacks nest in small numbers in Florida as well as elsewhere in the Caribbean, South America, and West Africa. The primary threat to the species is mortality from longline and gillnet fishing. The leatherback sea turtle is listed under the Endangered Species Act as "endangered" throughout its range. The species has critical habitat designated in the U.S. Virgin Islands, but none in the Pacific.

60.     Pacific leatherbacks are split into two genetically distinct Eastern and Western populations. The Eastern Pacific population nests on the coast of Mexico and Central America. From there, the turtles migrate south to feed in the southeast Pacific off South America's West Coast.

61.     The Western Pacific population nests along the beaches of Indonesia, Papua New Guinea, the Solomon Islands, and Vanuatu. It is estimated that this population includes only 2,000 to 5,700 nesting females.

62.     The Western Pacific leatherback, like the Eastern Pacific leatherback, faces numerous threats to its existence, including incidental capture and death in commercial fishing gear, marine debris, egg poaching, destruction of nesting beach habitat, degradation of its foraging habitat, climate change, and ocean acidification. Scientists have predicted that the Pacific leatherback could become extinct within a matter of decades if these threats are not addressed and population trends do not improve.

63.     Western Pacific leatherback sea turtles make a remarkable 6,000 mile journey across the Pacific Ocean from their nesting beaches in the Indo-Pacific to feed in the waters off the U.S. West Coast. Scientists have determined that the waters off the coast of California and Oregon are an essential foraging area for the Western Pacific leatherback population. It is this essential foraging area

that Plaintiffs have sought to be included in a revised critical habitat designation for the leatherback sea turtle.

64. In recent years, threats to the leatherback's continued existence and to its essential foraging habitat have continued and intensified. As described above, greenhouse gas emissions that contribute to climate change and ocean acidification have continued to accumulate without further regulation. More immediately, fishery managers have proposed expanding a number of domestic pelagic longline fisheries in the Pacific, including in the proposed critical habitat area, even though pelagic longline gear catches and kills significant numbers of leatherbacks each year and is the primary threat to the species' survival.

**D.     Plaintiffs' Petition for Leatherback Critical Habitat**

65. On September 26, 2007, Plaintiffs the Center, Oceana, and Turtle Island submitted a petition to the Fisheries Service to revise the critical habitat designation for the leatherback sea turtle under the Endangered Species Act to include waters in the Pacific Ocean off the U.S. West Coast. Petition to Revise the Critical Habitat Designation for the Leatherback Sea Turtle (*Dermochelys coriacea*) under the Endangered Species Act ("Leatherback Petition"). The Leatherback Petition was received by the Fisheries Service on October 2, 2007.

66. On December 28, 2007, the Fisheries Service made a positive 90-day finding on the petition and initiated a 60-day public comment period and status review. 72 Fed. Reg. 73,746 (Listing Endangered and Threatened Wildlife and Designating Critical Habitat; 90–day Finding for a Petition to Revise the Critical Habitat Designation for the Leatherback Turtle). This finding triggered the agency's legal obligation to make a 12-month finding no later than October 2, 2008, regarding how the agency would proceed with the requested revision. the Fisheries Service has not yet made such a finding.

67. Because Plaintiffs' critical habitat petition seeks only designation of ocean waters, the Fisheries Service has sole responsibility for responding to the petition.

68. On March 12, 2009, Plaintiffs sent the Fisheries Service and the Fish and Wildlife Service a 60-day notice of intent to sue over the agencies' failure to make the required findings on any of the three petitions. The required findings have not been made since that time. This litigation followed.

COMPLAINT FOR DECLARATORY
AND INJUNCTIVE RELIEF             Page 15

## VI.  CLAIMS FOR RELIEF

### First Claim for Relief

**(Violation of Endangered Species Act, 16 U.S.C. § 1533(b)(3), Failure to Make a 12-month Finding on the North Pacific Loggerhead Petition)**

69.    Plaintiffs re-allege and incorporate by reference all the allegations set forth in this Complaint, as though fully set forth below.

70.    The Fisheries Service's failure to make a 12-month finding on the Petition to list the North Pacific loggerhead as a DPS and list that DPS as endangered is a violation of the Endangered Species Act and its implementing regulations.  16 U.S.C. §§ 1533(b)(3)(B) & 1540(g).

71.    The Fisheries Service's failure to perform its mandatory, non-discretionary duty with respect to the North Pacific Loggerhead Petition also constitutes agency action "unlawfully withheld or unreasonably delayed" within the meaning of the Administrative Procedure Act, 5 U.S.C. § 706(1).

72.    Additionally, and/or alternatively, the Fisheries Service's failure to comply with this provision of the Endangered Species Act with respect to the North Pacific Loggerhead Petition is arbitrary and capricious, an abuse of discretion, not in accordance with law, and a failure to observe proper procedure within the meaning of the Administrative Procedure Act, 5 U.S.C. § 706(2).

### Second Claim for Relief

**(Violation of Endangered Species Act, 16 U.S.C. § 1533(b)(3), Failure to Make a 12-month Finding on the Western North Atlantic Loggerhead Petition)**

73.    Plaintiffs re-allege and incorporate by reference all the allegations set forth in this Complaint, as though fully set forth below.

74.    The Fisheries Service's and the Fish and Wildlife Service's failure to make a 12-month finding on the Petition to list the Western North Atlantic loggerhead as a DPS and list that DPS as endangered is a violation of the Endangered Species Act and its implementing regulations.  16 U.S.C. §§ 1533(b)(3)(B) & 1540(g).

75.    The Fisheries Service's and the Fish and Wildlife Service's failure to perform their mandatory, non-discretionary duty with respect to the Western North Atlantic Loggerhead Petition also constitutes agency action "unlawfully withheld or unreasonably delayed" within the meaning of the

Administrative Procedure Act, 5 U.S.C. § 706(1).

76. Additionally, and/or alternatively, the Fisheries Service's and the Fish and Wildlife Service's failure to comply with this provision of the Endangered Species Act with respect to the Western North Atlantic Loggerhead Petition is arbitrary and capricious, an abuse of discretion, not in accordance with law, and a failure to observe proper procedure within the meaning of the Administrative Procedure Act, 5 U.S.C. § 706(2).

### Third Claim for Relief

**(Violation of Endangered Species Act, 16 U.S.C. § 1533(b)(3)(D)(ii), Failure to Make a 12-month Finding on the Leatherback Petition)**

77. Plaintiffs re-allege and incorporate by reference all the allegations set forth in this Complaint, as though fully set forth below.

78. The Fisheries Service's failure to make a 12-month finding on the Petition to revise the critical habitat designation for the leatherback sea turtle is a violation of the Endangered Species Act and its implementing regulations. 16 U.S.C. §§ 1533(b)(3)(D)(ii) & 1540(g).

79. The Fisheries Service's failure to perform its mandatory, non-discretionary duty with respect to the Leatherback Petition also constitutes agency action "unlawfully withheld or unreasonably delayed" within the meaning of the Administrative Procedure Act, 5 U.S.C. § 706(1).

80. Additionally, and/or alternatively, the Fisheries Service's failure to comply with this provision of the Endangered Species Act with respect to the Leatherback Petition is arbitrary and capricious, an abuse of discretion, not in accordance with law, and a failure to observe proper procedure within the meaning of the Administrative Procedure Act, 5 U.S.C. § 706(2).

### VII. PRAYER FOR RELIEF

For the reasons stated above, Plaintiffs respectfully request that the Court grant the following relief.

1. Declare that the Fisheries Service violated its non-discretionary duties under 16 U.S.C. § 1533(b)(3)(B) of the Endangered Species Act by failing to timely make a 12-month finding in response to the North Pacific Loggerhead Petition;

2. Issue permanent injunctive relief compelling the Fisheries Service to make and publish

COMPLAINT FOR DECLARATORY
AND INJUNCTIVE RELIEF        Page 17

in the Federal Register a 12-month finding under the Endangered Species Act on the North Pacific Loggerhead Petition by a date certain;

3. Declare that the Fisheries Service and the Fish and Wildlife Service violated their non-discretionary duties under 16 U.S.C. § 1533(b)(3)(B) of the Endangered Species Act by failing to timely make a 12-month finding in response to the Western North Atlantic Loggerhead Petition;

4. Issue permanent injunctive relief compelling the Fisheries Service and the Fish and Wildlife Service to make and publish in the Federal Register a 12-month finding under the Endangered Species Act on the Western North Atlantic Loggerhead Petition by a date certain;

5. Declare that the Fisheries Service violated its non-discretionary duties under 16 U.S.C. § 1533(b)(3)(D)(ii) of the Endangered Species Act by failing to timely make a 12-month finding in response to the Leatherback Petition to revise critical habitat for the leatherback sea turtle;

6. Issue permanent injunctive relief compelling the Fisheries Service to make and publish in the Federal Register a 12-month finding under the Endangered Species Act on the Leatherback Petition by a date certain;

7. Award Plaintiffs their costs of litigation, including reasonable attorneys fees; and

8. Grant Plaintiffs such other relief as the Court deems just and proper.

DATE: May 28, 2009

Respectfully Submitted,

Brendan Cummings (CA Bar No. 193952)
CENTER FOR BIOLOGICAL DIVERSITY
P.O. Box 549
Joshua Tree, CA 92252
Phone: (760) 366-2232
Facsimile: (760) 366-2669
Email: bcummings@biologicaldiversity.org

Andrea A. Treece (CA Bar No. 237639)
Miyoko Sakashita (CA Bar No. 239639)
CENTER FOR BIOLOGICAL DIVERSITY
San Francisco Bay Area Office
351 California Street, Suite 600
San Francisco, CA 94104

1
2
3
4  Phone:   (415) 436-9682
   Facsimile: (415) 436-9683
   Email: atreece@biologicaldiversity.org
              miyoko@biologicaldiversity.org

   Attorneys for Plaintiffs

5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

COMPLAINT FOR DECLARATORY
AND INJUNCTIVE RELIEF          Page 19